JAMES MICHAEL ROBBINS, AS A SHAREHOLDER OF TWEETSIE RAILROAD, INC., PLAINTIFF V. TWEETSIE RAILROAD, INC., A NORTH CAROLINA CORPORATION; REVALLE B. COURTLEY; E. SPENCER ROBBINS; T. BRAGG McLEOD; H. BRILL HUNTLEY; GRACE F. LIEBHART; JERALD C. LIEBHART, JR.; RICHARD L. LIEBHART; CHRISTOPHER B. ROBBINS; AND R. FRANK COFFEY, DEFENDANTS

No. COA96-587

(Filed 1 July 1997)

**1. Trial § 45 (NCI4th)— motion to dismiss—consideration of matters outside pleadings—treated as motion for summary judgment**

The proper inquiry on appeal of a shareholders' derivative action was whether there was any genuine issue as to any material fact and whether the moving party was entitled to judgment as a matter of law where defendants made 12(b)(6) motions to dismiss but the trial court admitted and considered matters outside

**ROBBINS v. TWEETSIE RAILROAD, INC.**

[126 N.C. App. 572 (1997)]

of the pleadings, so that defendants' motions to dismiss were converted to Rule 56 motions for summary judgment.

**Am Jur 2d, Summary Judgment § 13.**

**What, other than affidavits, constitutes "matters outside the pleadings," which may convert motion under Federal Rule of Civil Procedure 12(b), (c), into Motion for Summary Judgment. 2 ALR Fed. 1027.**

2. **Corporations § 146 (NCI4th)— shareholder derivative plaintiff—required to be fair and adequate representative of corporate interest**

The requirement that a shareholder derivative plaintiff be a fair and adequate representative of the corporate interest is implicit in N.C.G.S. § 55-7-40. There is nothing to indicate that the General Assembly intended that a minority shareholder, who has uppermost a personal agenda rather than the best interests of the corporation, would have standing to file and maintain a shareholder derivative action under N.C.G.S. § 55-7-40, and the U.S. Supreme Court has long held that the shareholder who brings a derivative action is a self-chosen representative and a volunteer champion and, as such, must bear some responsibility or have some liability and accountability which will protect the interests he elects himself to represent.

**Am Jur 2d, Corporations §§ 2353-2365.**

**Requirement of Rule 23.1 of Federal Rules of Civil Procedure that plaintiff in shareholder derivative action "fairly and adequately represent" shareholders' interests in enforcing corporation's right. 15 ALR Fed. 954.**

3. **Corporations § 146 (NCI4th)— shareholder derivative plaintiff—no standing—did not fairly and adequately represent corporate interest**

There was no abuse of discretion in a shareholders' derivative action in the trial court's finding that plaintiff does not fairly and adequately represent the interest of defendant corporation and therefore lacks standing to maintain this action. This is an issue of first impression with no North Carolina law addressing this contention, but the federal standard for assessing whether a shareholder may fairly and adequately represent a corporation under section 23.1 of the Federal Rules of Civil Procedure is

ROBBINS v. TWEETSIE RAILROAD, INC.

[126 N.C. App. 572 (1997)]

adopted. Under that standard, whether a shareholder fairly and adequately may represent a corporation is to be decided on a case by case basis and is reviewable on an abuse of discretion standard. In this case, there is plenary evidence in the record to support the trial court's finding and that finding will not be disturbed on appeal.

**Am Jur 2d, Corporations §§ 2353-2365.**

**Requirement of Rule 23.1 of Federal Rules of Civil Procedure that plaintiff in shareholder derivative action "fairly and adequately represent" shareholders' interests in enforcing corporation's right. 15 ALR Fed. 954.**

4. **Pleadings § 378 (NCI4th)— shareholder derivative action—motion to add party—denied—holder of one non-voting share—no prejudice**

There was no abuse of discretion in the trial court's denial of a shareholder derivative plaintiff's motion to amend to add a party where the party whom plaintiff wished to add was the owner of but one Class B share and could add little to legitimate plaintiff's derivative suit. Plaintiff failed to show any prejudice.

**Am Jur 2d, Corporations §§ 2353-2365.**

**Requirement of Rule 23.1 of Federal Rules of Civil Procedure that plaintiff in shareholder derivative action "fairly and adequately represent" shareholders' interests in enforcing corporation's right. 15 ALR Fed. 954.**

Appeal by plaintiff from order entered 1 February 1996 by Judge Loto G. Caviness in Watauga County Superior Court. Heard in the Court of Appeals 17 February 1997.

*Elliot, Pishko, Gelbin & Morgan, P.A., by David C. Pishko, for plaintiff-appellant.*

*Robinson, Bradshaw & Hinson, P.A., by Garland S. Cassada, for defendants-appellees Revalle B. Courtley and Christopher B. Robbins.*

*Rayburn, Moon & Smith, P.A., by James B. Gatehouse, for defendant-appellee Tweetsie Railroad, Inc.*

*Anderson, Rutherford, Geil & Scherer, L.L.P., by John M. Geil, for defendant-appellee Jerald C. Liebhart, Jr.*

**ROBBINS v. TWEETSIE RAILROAD, INC.**

[126 N.C. App. 572 (1997)]

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by Robert C. Ervin, for defendants-appellees T. Bragg McLeod, H. Brill Huntley, Richard L. Liebhart and Grace F. Liebhart.*

*James H. Henderson, P.C., by James H. Henderson, for defendant-appellee E. Spencer Robbins.*

SMITH, Judge.

Plaintiff James Michael Robbins is a minority shareholder of defendant Tweetsie Railroad, Inc. (hereinafter "Tweetsie") Class B non-voting common stock. Plaintiff also owns an interest in a tract of land leased to defendant Tweetsie. The individual defendants are officers, directors, and shareholders of defendant Tweetsie, and include the owners of Class A shares who control the corporation. Plaintiff was made aware of some disturbing transactions between defendant corporation and some of its officers and directors by William J. Bair, the organizer of an investment group which had an interest in purchasing defendant Tweetsie's outstanding shares of stock. In response to Mr. Bair's information, plaintiff employed the accounting firm of McMillan, Pate and Robertson to conduct an examination of defendant Tweetsie's books and records. After receiving the firm's report, on 10 July 1995, plaintiff instituted this shareholder derivative action against defendant Tweetsie and several of its officers and directors pursuant to North Carolina General Statutes section 55-7-40.

In his complaint, plaintiff alleged that, over a period of years, the corporation made loans and cash advances to certain officers and directors without proper documentation or approval by the Board of Directors, and that the directors had failed to take appropriate action to recover these funds. Plaintiff further alleged that the making of these loans and advances, along with the failure to collect these funds, constituted a violation of the individual defendants' fiduciary duties to the corporation and its shareholders.

On 18 August 1995, defendant Christopher B. Robbins filed a verified motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Defendant Robbins also submitted a transcript of his deposition taken in another action, as well as other matters outside of the pleadings, in support of his motion. Thereafter, on 22 August 1995, defendant Revalle B. Courtley filed a motion to dismiss plaintiff's complaint pursuant to Rules 12(b)(4) and (5) of the Rules of Civil Procedure for insufficiency of

**ROBBINS v. TWEETSIE RAILROAD, INC.**

[126 N.C. App. 572 (1997)]

process and insufficiency of service of process. On 31 August 1995, defendant Tweetsie filed a motion to dismiss pursuant to Rule 12(b)(6), supported by the affidavit of Linda Wise. Finally, on 5 September 1995, defendants H. Brill Huntley, Grace F. Liebhart, Richard L. Liebhart and T. Bragg McLeod filed a motion to dismiss pursuant to Rules 12(b)(6) and (7) of the Rules of Civil Procedure. Subsequently, plaintiff's amended complaint, filed 6 September 1995, was deemed properly filed and served and proceedings were stayed for sixty (60) days by order entered 27 September 1995 by Judge James U. Downs. On 22 December 1995, defendants Tweetsie, Robbins and Courtley renewed their motions to dismiss; and these motions were scheduled for hearing on 29 January 1996. Plaintiff filed a motion for continuance of this hearing on 17 January 1996, and on 24 January 1996, plaintiff filed a motion for leave to amend complaint and add additional parties plaintiff and defendant.

This matter came on for hearing before Judge Loto G. Caviness on defendants' and plaintiff's respective motions. Defendants presented evidence which tended to show that plaintiff had sold William Bair an option to purchase the land leased to defendant Tweetsie, and used the proceeds to fund this shareholder derivative action. Further, defendants' evidence tended to show that plaintiff filed this action as a part of Mr. Bair's plan to purchase defendant Tweetsie's outstanding shares. Plaintiff, however, presented evidence that his objectives in filing this action were to halt defendants' practice of making unsecured, undocumented loans to favored directors and officers, and to cause the corporation to collect the outstanding loans in order to "get the money back into the company."

After reviewing all of the evidence, Judge Caviness entered an order on 1 February 1996 denying plaintiff's motion for continuance and motion to amend, granting defendants' motions to dismiss for failure to state a claim upon which relief can be granted, and granting defendant Courtley's motion to dismiss for lack of personal jurisdiction. Plaintiff appeals.

[1] At the outset, we must determine the proper procedural posture of this action on appeal. In the instant action, defendants made 12(b)(6) motions to dismiss for failure to state a claim for which relief can be granted. However, the trial court, in ruling upon the motion, admitted and considered matters outside of the pleadings. Accordingly, defendants' 12(b)(6) motions to dismiss were converted to Rule 56 motions for summary judgment. *See Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 262, 257 S.E.2d 50, 53, *disc.*

**ROBBINS v. TWEETSIE RAILROAD, INC.**

[126 N.C. App. 572 (1997)]

*review denied,* 298 N.C. 296, 259 S.E.2d 301 (1979). Consequently, the inquiry becomes whether there is any genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *See id.*

**[2]** On appeal, plaintiff first argues that the former section 55-7-40(a) of the North Carolina General Statutes does not require that a shareholder derivative plaintiff be a "fair and adequate representative" of the corporate interest. Defendants, however, argue that this requirement is implicit in the statute, by the very nature of a shareholder derivative action. For the reasons stated herein, we find defendants' argument to be persuasive.

Derivative actions are actions brought by one or more shareholders to enforce the rights of the corporation. N.C. Gen. Stat. § 1A-1, Rule 23 (b) (1990). North Carolina courts have expressly rejected the argument that a shareholder has any individual right of action for the loss in the value of his shares resulting from wrongs committed against the corporation. Russell Robinson, *Robinson on North Carolina Corporation Law* § 17.2(a) at p. 333 (5th ed. 1995). That is to say that there is no *individual* recovery where a shareholder alleges mere injury to the corporation and nothing more—he must seek relief derivatively. *Id.*

By its very nature, a derivative action requires that the shareholder bringing such an action have proper standing to bring the action. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 93 L. Ed. 1528 (1949). While North Carolina's statutory scheme has long required a shareholder to have been a shareholder at the time of the act or omission complained of, or have become a shareholder by operation of law from one who was a shareholder at that time, *see* N.C. Gen. Stat. § 55-7-40(a) (1990), it was not until recently that the General Assembly codified the requirement that a shareholder be a fair and adequate representative of the corporate interest in enforcing the right of the corporation. *See* N.C. Gen. Stat. § 55-7-41 (Cum. Supp. 1996). Effective 1 October 1995, any shareholder must meet both of these requirements to have standing to bring a derivative action in the state courts of North Carolina. *See id.* Prior to its codification, however, the requirement of fair and adequate representation was hinted at in case law. *See Swenson v. Thibaut*, 39 N.C. App. 77, 100, 250 S.E.2d 279, 294 (1978) (referring to "insufficient representation of shareholders" as a defense to a derivative action), *appeal dismissed and disc. review denied*, 296 N.C. 740, 254 S.E.2d 181 (1979).

Plaintiff argues that as the defense of inadequate representation was not actually raised in *Swenson*, that case can not govern the outcome in the instant action. We do not agree. Plaintiff further argues that the General Assembly, in patterning our Rules of Civil Procedure after the Federal Rules, but declining to adopt Rule 23.1 of the Federal Rules of Civil Procedure, indicated its intent to require no more than that the shareholder own shares at the time of the transaction of which he complains or to have acquired his shares from someone who owned the shares at that time. Again, we do not agree. There is nothing to indicate that the General Assembly intended that a minority shareholder, who has uppermost a personal agenda rather than the best interests of the corporation, would have standing to file and maintain a shareholder derivative action under section 55-7-40 of our General Statutes.

The United States Supreme Court has long held that the shareholder who brings a derivative action is a "self-chosen representative and a volunteer champion," and as such, must bear some responsibility, or have some liability and accountability which will protect the interests he elects himself to represent. *Cohen*, 337 U.S. at 549-50, 93 L. Ed. at 1538. Accordingly, while plaintiff argues to the contrary, we find this Court's reference in *Swenson* persuasive; and recognize the implicit requirement in section 55-7-40 of our General Statutes that a shareholder fairly and adequately represent the interest of the corporation in order to maintain a shareholder derivative action. *Accord Barrett v. Southern Conn. Gas Co.*, 374 A.2d 1051 (Conn. 1977); *Youngman v. Tahmoush*, 457 A.2d 376 (Del. Ch. 1983); *Adiel v. Electronic Financial Sys.*, 513 So.2d 1347 (Fla. Dist. Ct. App. 1987); *Palmer v. U.S. Savings Bank of America*, 553 A.2d 781 (N.H. 1989).

[3] In light of our finding in this regard, we now address plaintiff's next argument that he fairly and adequately represented the interests of the corporation with respect to matters alleged in the amended complaint. This is an issue of first impression, and there is no North Carolina law addressing this contention. Significantly, however, there is a body of federal case law interpreting Rule 23.1 of the Federal Rules of Civil Procedure's requirement that a plaintiff be a fair and adequate representative of a corporation in order to maintain a shareholder derivative suit in federal court. As we have recognized that there is a similar implicit requirement in section 55-7-40 of our General Statutes which governs derivative actions in our state courts, we adopt and apply the federal standard for assessing whether a

shareholder may fairly and adequately represent a corporation under section 23.1 of the Federal Rules of Civil Procedure.

Federal case law provides that a determination of whether a shareholder fairly and adequately may represent a corporation under section 23.1 of the Federal Rules of Civil Procedure is to be decided on a case by case basis, and is reviewable on an abuse of discretion standard. *See Lewis v. Curtis*, 671 F.2d 779, 788 (3d. Cir.) (citing *Owen v. Modern Diversified Indus., Inc.*, 643 F.2d 441, 443 (6th Cir. 1981)), *cert. denied*, 459 U.S. 880, 74 L. Ed. 2d 144 (1982); *Rothenberg v. Security Management Co., Inc.*, 667 F.2d 958, 961 (11th Cir. 1982); *Hornreich v. Plant Industries, Inc.*, 535 F.2d 550, 552 (9th Cir. 1976). A defendant bears the burden of demonstrating that the representation will be inadequate. *Lewis*, 671 F.2d at 788 (citing *Smallwood v. Pearl Brewing Company*, 489 F.2d 579, 592-93 n.15 (5th Cir.), *cert. denied*, 419 U.S. 873, 42 L. Ed. 2d 113 (1974)).

The evidence in the instant case tends to show that plaintiff is a minority shareholder of nonvoting shares in defendant Tweetsie, a company that was once partly owned by his father. Plaintiff candidly confesses that he has personal animus against the present officers and/or directors of defendant corporation. Plaintiff also owns an undivided twenty-four percent (24%) interest in certain realty which defendant corporation leases from plaintiff and his co-tenants. Plaintiff was approached by William Bair and made aware of certain loans and cash advances made by the corporation to certain officers and directors, that have not been paid back.

Mr. Bair is a Durham, North Carolina attorney who had previously expressed an interest in purchasing defendant corporation. Mr. Bair had developed a "Business Plan" in which he noted that the acquisition of defendant corporation would "entail a certain progression of activities" which included the following litigation scheme:

> Retain lawyers to prepare a stockholders derivative complaint and to be prepared to file same if needed. I would use that complaint for additional leverage in negotiating with Harry [Robbins] and Rev[alle] [Courtley] for their shares.

Subsequently, Mr. Bair submitted proposals to defendant Tweetsie's Board of Directors for the purchase of the stock or assets of defendant corporation. When the Board rejected Mr. Bair's offer as not being in the best interests of defendant corporation or its shareholders, Mr. Bair contacted defendants Robbins and Courtley about the purchase

ROBBINS v. TWEETSIE RAILROAD, INC.

[126 N.C. App. 572 (1997)]

of their Tweetsie stock. Plaintiff accompanied Mr. Bair when he met with defendants Robbins and Courtley. Plaintiff was identified by Mr. Bair as a disgruntled shareholder who was considering filing a derivative action. In addition, plaintiff indicated at that time that if defendants Robbins and Courtley would not sell their shares to Mr. Bair, he would not renew the lease of the property to defendant corporation when it expired. In spite of these warnings, defendants Robbins and Courtley rejected Mr. Bair's offer to purchase their Tweetsie stock.

Consequently, plaintiff commenced this derivative action on 10 July 1995 against defendants. Plaintiff admits that he entered into an agreement with Mr. Bair in order to finance this action. This agreement granted Mr. Bair an option to purchase plaintiff's twenty-four percent (24%) interest in the property currently leased to defendant corporation by plaintiff and his co-tenants, for the sum of $30,000.00. Plaintiff insists, however, that his purpose in initiating this action is to halt defendants' practice of making unsecured, undocumented loans to favored directors and officers and to aid the corporation in collecting the outstanding loans to "get the money back into the company." Plaintiff also contends that he did not file this action as a part of Mr. Bair's plan to purchase defendant corporation's outstanding shares; and that this suit may be detrimental to Mr. Bair's efforts.

After reviewing all of the evidence and hearing the arguments of counsel, the trial court found that as a matter of law, plaintiff did not fairly and adequately represent the interests of the defendant corporation, and as such dismissed this action. As noted above, federal courts have utilized an abuse of discretion standard in analyzing a trial court's decision to dismiss a shareholder derivative action for lack of standing. " 'An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision.' " *Gunter v. Anders*, 115 N.C. App. 331, 334, 444 S.E.2d 685, 687 (1994) (quoting *Borg-Warner Acceptance Corp. v. Johnston*, 107 N.C. App. 174, 178, 419 S.E.2d 195, 197 (1992), *disc. review denied,* 333 N.C. 254, 424 S.E.2d 918 (1993)), *disc. review denied*, 339 N.C. 612, 454 S.E.2d 250 (1995). Adopting this standard and employing said standard to the facts in this case, we find plenary evidence in the record to support the trial court's finding that plaintiff does not fairly and adequately represent the interest of defendant corporation, and therefore, lacks standing to maintain this action. As plaintiff fails to show an abuse of discretion, the trial court's finding in this respect will not be disturbed on appeal.

**[4]** Plaintiff next assigns as error the trial court's denial of his motion to add an additional party plaintiff. This assignment of error also fails.

A motion to amend pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure " 'is addressed to the sound discretion of the trial judge and the denial of such motion is not reviewable absent a clear showing of an abuse of discretion.' " *Smith v. McRary*, 306 N.C. 664, 671, 295 S.E.2d 444, 448 (1982) (quoting *Edwards v. Edwards*, 43 N.C. App. 296, 298, 259 S.E.2d 11, 13 (1979)).

In response to the allegations of defendants' motion to dismiss, plaintiff filed a motion to amend his complaint for a second time to include James Patrick Locke as a party plaintiff. While plaintiff's first motion to amend was allowed, his second motion to amend to add Mr. Locke as a party plaintiff was denied. Notably, Locke was the owner of but one share of Class B stock of defendant corporation, and could add little to legitimate plaintiff's derivative suit. As plaintiff fails to show any prejudice by the trial court's action and we find no abuse of discretion, this assignment of error is overruled.

Since plaintiff cannot fairly and adequately represent defendant corporation, we need not address plaintiff's remaining arguments on appeal; and affirm the decision of the trial court.

Affirm.

Chief Judge ARNOLD and MARTIN, John C. concur.